## COLE *v.* DOOLEY.

1. NAVIGABLE WATERS—LOGGING.
    A stream and lake, which were used for floating logs as long as any were tributary, and since then for navigation by skiffs and steamers, are navigable.

2. DRAINS—NAVIGABLE LAKE.
    A public drain, the avowed purpose of which is to reclaim land by lowering the level of a navigable lake, is not authorized, under section 4339 of the Compiled Laws, which prohibits impairing the navigability of waters by such drains.

Appeal from Barry; Winsor, J., presiding. Submitted June 10, 1904. (Docket No. 9.) Decided July 27, 1904.

Bill by Ervin P. Cole and others against Patrick Dooley, drain commissioner of Barry county, to restrain the construction of a proposed drain. From a decree for complainants, defendant appeals. Affirmed.

*Colgrove & Potter*, for complainants.

*Thomas Sullivan* and *Fred W. Walker*, for defendant.

HOOKER, J. Thornapple Lake is a body of water between two and three miles long, and half a mile in width, in the county of Barry. The testimony in the case shows

that there is deep water in the lake, but that the edges are low and wet, and that shallow water extends some distance into the lake, and that the bottom is soft, to a depth of many feet. The shore around the lake is in many places springy, and it appears to be the consensus of opinion that springs exist in the lake, which help to feed it. Several streams empty into this lake, the largest of which is Thornapple river, about 60 feet wide where it flows into the lake. There is much low land along this river, especially near the lake. The outlet of the lake is also called "Thornapple River," and it is larger than the inlet of the same name.

Interested parties filed a petition with the county drain commissioner to establish a drain beginning at the outlet of the lake and extending down the stream, the avowed object of which was to lower the level of the lake four feet. Near the south bank of this lake there is a high bluff, owned by the complainants, which approaches within 50 feet or thereabouts of the water's edge. The complainants' father owned this property, consisting of a farm, and he built a dock and filled in along the shore behind it; thereby giving access to the lake, where he kept boats to let, and a steamer, which he used to transport pleasure seekers who were attracted to the place. For three decades or more he and his children, who now own the place, conducted a successful resort, and spent considerable money in improvements. Among other things constructed by them to this end were a dance hall, and a larger dwelling, a boathouse, and a depot or waiting room for passengers. This was immediately in front of, and within 70 feet or thereabouts of, the house, and also immediately opposite the dock. There is about 4 feet of water at the dock at the ordinary stage of water.

The drain proposed will lay bare about 66 acres of the bottom of the lake, and it will make shallows of other lake bottoms now covered by 4 feet and more of water. It will correspondingly lessen the area that can be traversed by complainants' boats—especially their steamboat. The com-

plainants own a mile and a half of the shore of the lake, with the riparian rights incident thereto, and they oppose the proposed drain, and have filed the bill in this cause to restrain its construction. The testimony shows that the interested landowners, who expect to have lands reclaimed by this drain, have contributed to a fund to conduct the defense; and it is significant that several, if not most, of the large contributors, own lands near the inlets, and are not owners of land through which the proposed drain is to be constructed. It seems to be a plain case of tapping and drawing down the surface of a lake, and a barefaced proceeding to improve farms, at complainants' expense, under the pretense of improving the public health—a prostitution of the drain law to private purposes.

The complainants were not made parties to the drain proceeding. They were not assessed for benefits, and we do not see how they could be, and, on the other hand, no damages suffered by them were considered.

Section 4339, 2 Comp. Laws, provides:

"Drains may be laid or extended into or along or from any lake or other body of water surrounded wholly or in part by a swamp, marsh, or other low lands for the general purpose of drainage contemplated by this act but not so as to impair the navigation of any navigable water."

The evidence in this case is clear that Thornapple river and Thornapple Lake have been used for floating logs whenever there were logs to float, and occasion to float them. As long as there was timber in the vicinity, it was floated upon the lake; and in early days timber was brought down the tributaries not only to a boom and mill upon the lake, but also down the outlet to a mill situate at Quimby, a mile or two below the lake, and it has been navigated since by thousands in steamboats and skiffs owned by complainants. The stream and lake were therefore navigable waters, under our decisions. See *Moore* v. *Sanborne*, 2 Mich. 520 (59 Am. Dec. 209); *Lorman* v. *Benson*, 8 Mich. 18 (77 Am. Dec. 435); *Sterling* v. *Jackson*, 69 Mich. 530 (37 N. W. 845, 13 Am. St. Rep.

405). As shown by the last-mentioned case, the Ordinance of 1787, art. 4, which provided:

"The navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said Territory as to the citizens of the United States, and those of any other States that may be admitted into the Confederacy, without any tax, imposts, or duty therefor"

—Saved to the public the right to navigate the streams of the State by bateaux, and even canoes. Who can doubt that the Grand river and its tributaries were navigable, under this rule, as well as Thornapple Lake, through which the river runs? It may be that hurrying the water from the surface of the land by artificial drains, which empty it into the Great Lakes with a celerity which nature abhors, is essential to public health. Under this statute, it is possible that private lakes and ponds may be obliterated in the interest of public health, upon compensating the owners for the loss, which, however, has not been done nor proposed in this instance; but the legislature has set bounds to the practice, by limiting such draining and prohibiting the impairing of the navigability of water. Thornapple Lake being navigable, and this drain being admittedly intended to lower the ordinary level of the lake four feet, it is forbidden by the statute.

As this point disposes of the case, we do not pass upon other questions raised.

The decree is affirmed.

The other Justices concurred.